IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TERRI LYNN CARECCIA,<br><br>        Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, Commissioner of the Social Security Administration;<br><br>        Defendant. | 8:19CV143<br><br>**MEMORANDUM AND ORDER** |

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration that the plaintiff, Terri Lynn Careccia, is not disabled. Careccia seeks reversal of the decision of Andrew M. Saul, Acting Commissioner of the Social Security Administration (Commissioner). Careccia argues the Commissioner's decision is "contrary to law and not supported by substantial evidence." (Filing No. 14). The Commissioner seeks affirmance of the decision, asserting that Careccia "had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations, and substantial evidence on the record as a whole supports the Commissioner's decision." (Filing No. 17).

For the reasons stated below, the Commissioner's decision will be affirmed.

I.     Procedural Background

Careccia filed for a period of disability and disability insurance benefits on November 17, 2015, alleging disability beginning September 16, 2015. (Filing No. 10-2, at CM/ECF p. 11). The claim was initially denied on June 20, 2016, and again

1

upon reconsideration on September 28, 2016. (Id.). Careccia requested a hearing, which was held on April 13, 2018 before an Administrative Law Judge (ALJ). (Id.).

On August 1, 2018, the ALJ issued a written decision denying Careccia's claims for benefits. (Filing No. 10-2, at CM/ECF p. 8). Careccia filed a request for review of the ALJ's decision. The Appeals Council denied the request on February 16, 2019. (Filing No. 10-2, at CM/ECF pp. 2-4). Careccia filed her appeal in this court pursuant to 42 U.S.C. 405(g), on April 4, 2019. (Filing No. 1).

## II. The ALJ's Decision

The ALJ evaluated Careccia's claim through the five-step evaluation process described in 20 CFR 404.1520(a) to determine whether Careccia was disabled under sections 216(i) and 223(d) of the Social Security Act. As reflected in his decision, the ALJ made the following findings:

1. The claimant last met the insured status requirement of the Social Security Act on June 30, 2018. (Filing No. 10-2, at CM/ECF p. 13).

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 16, 2015, through her date last insured of June 30, 2018 (20 CFR 404.1571 *et. seq.*). (Filing No. 10-2, at CM/ECF p. 13).

3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia, depression, and hearing loss (20 CFR 404.1520(c)). (Filing No. 10-2, at CM/ECF p. 14).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Filing No. 10-2, at CM/ECF p. 15).

5. Through the date last insured, the claimant has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a). She is able to perform work that requires no climbing of ladders, ropes, or scaffolds, or crawling; and no more than occasional climbing of ramps and stairs, balancing, kneeling, stooping, and crouching. The claimant can perform work that requires no concentrated exposure to temperature extremes, vibration, humidity, loud noise, or hazards such as unprotected heights, and she is able to perform work that requires no contact with the general public and limited contact with co-workers. (Filing No. 10-2, at CM/ECF p. 17).

6. Through the date last insured, the claimant was capable of performing past relevant work as a data entry clerk and accounting clerk. This work did not require the performance of work-related activities precluded by the claimant's residual function capacity (20 CFR 404.1565). (Filing No. 10-2, at CM/ECF p. 22).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 16, 2015, the alleged onset date, through June 30, 2018, the date last insured (20 CFR 404.1520(f)). (Filing No. 10-2, at CM/ECF p. 23).

III. Issues Raised for Judicial Review

Careccia requests judicial review of the ALJ's decision, asserting the following arguments support her claim for reversal:

1. The ALJ erred by failing to analyze the opinion evidence in accordance with the regulations, agency policy, and Eighth Circuit precedent.

2. The ALJ's credibility assessment is deficient generally as a result of the errors described above; and specifically so in that the ALJ failed to consider Plaintiff's stellar work history.

(Filing No. 15, at CM/ECF p. 1).

IV. The Record and Proceedings Before the ALJ

Careccia was an individual of advanced age, with a high school education and past relevant work as a data entry clerk and accounting clerk when she submitted her application for benefits. She claimed mental and physical conditions which limited her ability to work, including: 1) hearing loss in her right ear; 2) fibromyalgia; 3) arthritis; 4) high blood pressure; 5) GERD; 6) heart murmur; 7) vision issues; 8) tendonitis in right wrist; and 9) Type 2 diabetes. (Filing No. 10-6, at CM/ECF p. 15). In addition, there was testimony at the hearing that Careccia suffers from bilateral upper extremity weakness, macular degeneration, lumbar spine disorders, and edema. (Filing No. 10-2, at CM/ECF p. 39).

Careccia is the sole provider for her 11-year-old adopted daughter who has her own disabilities, including ADHD, ODD, and RAD. (Filing No. 10-2, at CM/ECF p. 40). Careccia reports she does all the house related chores "as best she can."

([Filing No. 10-2, at CM/ECF p. 50](#)). Careccia has an unrestricted driver's license and reports she drives daily. ([Filing No. 10-2, at CM/ECF pp. 40-41](#)). Careccia has driven to California and Arizona, using the cruise control feature and occasionally drives to Lincoln. ([Filing No. 10-2, at CM/ECF p. 47](#)). Careccia has not worked since September 16, 2015, her alleged onset date of disability, however she did volunteer at the animal shelter cleaning cat cages until the end of 2016 or beginning of 2017 when she stopped for health reasons. ([Filing No. 10-2, at CM/ECF p. 41](#)).

Careccia reported her eyes to be her most serious physical impairment, describing that she must get within six inches of a computer to see it clearly and her vision starts to blur after about 20 minutes. ([Filing No. 10-2, at CM/ECF pp. 42-43](#)). In conflict with the above complaints, Careccia testified that she reads constantly and will use a tablet to read. ([Filing No. 10-2, at CM/ECF p. 43](#); [Filing No. 10-2, at CM/ECF p. 51](#)). During the hearing, Careccia was seen consulting her phone screen to read off her medication and appeared to do so without issue. ([Filing No. 10-2, at CM/ECF p. 20](#), 44).

Regarding her complaints of fibromyalgia, Careccia reports she cannot stand for long periods of time and has constant pain in her legs. ([Filing No. 10-2, at CM/ECF pp. 43-44](#)). Careccia also experiences symptoms of fibromyalgia in her upper arms and shoulders. ([Filing No. 10-2, at CM/ECF p. 44](#)). While Careccia reported lower back pain, she testified it was possible the pain was related to her fibromyalgia. ([Filing No. 10-2, at CM/ECF p. 46](#)). She testified she struggles to sit for more than 30 to 40 minutes at a time because her back starts hurting, and her legs start to tingle and feel uncomfortable. ([Filing No. 10-2, at CM/ECF p. 49](#)). She doesn't sleep well at night because she is unable to lay down for more than four to five hours at a time. (Id.). She further described that her hands don't work well, making it hard for her to write. She explained she has pains in her hands by her

lower thumb area related to the fibromyalgia. (Id.). She has received shots to relieve the pain, however, has not received a shot in about a year because her rheumatologist wanted to see if pills would provide her the same relief. ([Filing No. 10-2, at CM/ECF p. 50](#)). She reported the pills did provide her relief up until about a month or two ago. (Id.). Careccia stated she can only lift about 10 pounds and describes that she can pick up about 10 pounds and carry it, but she cannot bend her arms to lift 10 pounds up to a counter. ([Filing No. 10-2, at CM/ECF p. 51](#)). Careccia takes Gabapentin to treat fibromyalgia. ([Filing No. 10-2, at CM/ECF p. 44](#)).

Careccia describes that she woke up one day unable to hear out of her right ear. ([Filing No. 10-2, at CM/ECF p. 45](#)). She hears constant "white noise" and struggles to hear when there is background noise. (Id.). She has been fitted for hearing aids and reports she wears them occasionally to balance her hearing when she knows she will be in a crowded room. (Id.). She did not wear her hearing aids to the hearing and did not appear to have any problems understanding the proceedings despite her "white noise" complaint. ([Filing No. 10-2, at CM/ECF p. 20](#)).

Careccia testified that her blood pressure is under control at this time with medication. ([Filing No. 10-2, at CM/ECF p. 48](#)). She has not sought mental health treatment for three or four months. ([Filing No. 10-2, at CM/ECF p. 46](#)). She takes Citalopram to treat depression. (Id.).

Thomas J. Stanton, LMHP, completed a treating source statement on February 2, 2018, showing he started treating Careccia as of June 14, 2017. Mr. Stanton opined that Careccia is markedly limited in the ability to interact with others; extremely limited in the ability to concentrate, persist, or maintain pace; and mildly limited in the ability to adapt or manage oneself. ([Filing No. 11-5, at CM/ECF](#)

pp. 61-65). She can sometimes, but not consistently, maintain socially appropriate behavior, is likely to be off task 25 percent of the workday and is likely to miss work four or more days per month if she attempts to work full-time. (Id.). The report was signed by Mr. Stanton and by Steven A. Westby, Ph.D. (Id.). Dr. Westby, the supervising psychologist, did not complete the form, and there is no evidence of record indicating that he ever treated or saw Careccia. (Id.).

Stacy Brandt, a nurse practitioner, completed a treating source statement on February 5, 2018. According to that statement, Midtown Health Clinic started treating Careccia in August 2012 and Brandt personally started treating Careccia in August 2017. (Filing No. 11-6, at CM/ECF pp. 13-16). Ms. Brandt opined Careccia would likely be off task more than 25 percent of a typical workday due to symptoms severe enough to interfere with the attention and concentration needed to perform even simple work-related tasks; Careccia is able to maintain attention and concentration for less than 30 minutes before requiring a break due to symptoms such as pain and/or medication side effects; and she would miss four or more days per month if she attempts to work full-time as a result of her impairments and/or treatment. (Id.). The report was signed by Ms. Brandt and by Raymond Heller, MD, who did not complete the form and, based on the record, did not see or treat Careccia. (Id.).

The ALJ received Disability Determination Explanation forms dated June 20, 2016, August 10, 2016, and September 19, 2016. According to the forms dated June 20, 2016, for the DIB claim at the initial level, a consultative examination (CE) was requested because the "evidence as a whole, both medical and non-medical [was] not sufficient to support a decision on the claim." (Filing No. 10-3, at CM/ECF p. 7).

Dr. Meryl Severson provided the CE on June 7, 2016. Dr. Severson's record source statement states "that claimant would be able to stand for 10-15 minutes, walk at least one block, climb a half flight of steps and sit for one hour. She would be able to carry 20 pounds." ([Filing No. 10-3, at CM/ECF p. 4](#)). The record source statement goes on to state, "Dr. Severson's comments are not the maximum the claimant can do as indicated by the objective evidence. They appear to be a repetition of claimant's report and are not well supported by the available objective evidence relative to strength, [range of motion], etc." (Id.). Examples of the objective evidence referred to include, ability to get on and off the examination table easily, ability to hear instructions from 10 feet away and good fine motor coordination of the hands. ([Filing No. 10-3, at CM/ECF p. 7](#)).

Careccia's statements regarding her symptoms were considered "partially consistent" due to the inconsistencies regarding her hearing problems. ([Filing No. 10-3, at CM/ECF p. 8](#)). Specifically, she alleged hearing problems, however was able to hear speech from 10 feet away while denying the ability to hear a tuning fork with the right ear. (Id.). Additionally, she was able to get on and off the examination table easily and her strength, sensation, and reflexes were all within an acceptable range. (Id.). The report states, "overall, claimant's subjective [complaints] are far in excess of what would be expected given the objective evidence, treatment record, etc." (Id.). Careccia was determined to be "not disabled." ([Filing No. 10-3, at CM/ECF p. 13](#)).

According to the Disability Determination Explanation forms dated August 10, 2016, for the DIB claim at the reconsideration level, Careccia reported her conditions had become more severe, causing her greater limitations. ([Filing No. 10-3, at CM/ECF p. 17](#)). Again, she was found "not disabled." ([Filing No. 10-3, at CM/ECF p. 27](#)). Careccia requested another reconsideration, claiming her conditions had become more severe, causing her greater limitations. The Disability

Determination Explanation forms dated September 19, 2016 were reviewed at the reconsideration level. (Filing No. 10-3, at CM/ECF p. 30). Careccia was again determined to be "not disabled." (Filing No. 10-3, at CM/ECF p. 42).

The ALJ found Careccia's fibromyalgia, depression, and hearing loss were severe impairments, significantly limiting her physical or mental ability to do basic work activities. (Filing No. 10-2, at CM/ECF p. 14). The ALJ found Careccia has several non-severe impairments, including obesity, hypertension, diabetes, and low vision. (Id.).

Careccia's employment history includes work as a bartender, cook, accounting clerk, and data entry clerk. A vocational expert (VE) testified that a hypothetical individual with the same age, education, work profile and limitations[1] as Careccia would be able to perform the past work of accounting clerk or data entry clerk. (Filing No. 10-2, at CM/ECF pp. 54-55). The VE testified that there would be a significant number of unskilled jobs available in the national economy which would accommodate Careccia's limitations. When the ALJ added the stipulation that the individual would have a likelihood of being off task for 25% of an eight-hour work day and would miss five or more days of work per month, the VE testified the hypothetical individual would be unable to do any of the past-relevant work identified and there would be no jobs the hypothetical individual could do. (Filing No. 10-2, at CM/ECF pp. 58).

---

[1] The limitations specified are as follows: Careccia is able to perform work that requires no climbing of ladders, ropes, or scaffolds, or crawling; and no more than occasional climbing of ramps and stairs, balancing, kneeling, stooping, and crouching. The claimant is able to perform work that requires no concentrated exposure to temperature extremes, vibration, humidity, loud noise, or hazards such as unprotected heights. She is able to perform work that requires no contact with the general public and limited contact with co-workers.

V. Analysis

A denial of benefits by the commissioner is reviewed to determine whether it is supported by substantial evidence on the record as a whole. Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001); Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).

> If substantial evidence on the record as a whole supports the Commissioner's decision, it must be affirmed. Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). "'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006) (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).

Schultz v. Astrue, 479 F.3d 979, 982 (8th Cir. 2007). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. Wildman v. Astrue, 596 F. 3d 959 (8th Cir. 2010). The court should not overturn an ALJ's decision so long as it is in the "zone of choice" even if the court disagrees with the ALJ's conclusion. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). The court "defer[s] heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010).

Careccia claims the court must reverse the Commissioner's decision because the ALJ failed to analyze the opinion evidence in accordance with the regulations, agency policies, and Eighth Circuit precedent, and because the ALJ's credibility assessment failed to consider Careccia's stellar work history. For the reasons discussed below, these arguments will be denied.

10

1. Failure to Analyze the Opinion Evidence in Accordance with the Regulations, Policies and Precedent

    a. Evidence of Treating Physician

At the administrative hearing, the treating source statements of Thomas J. Stanton, LMHP, signed by Steven A. Westby, Ph.D., were received as an exhibit. Mr. Stanton's statements opined Careccia is markedly limited in the ability to interact with others; extremely limited in the ability to concentrate, persist, or maintain pace; and mildly limited in the ability to adapt or manage oneself. ([Filing No. 11-5, at CM/ECF pp. 61-65](#)). She can sometimes but not consistently maintain socially appropriate behavior, is likely to be off task 25 percent of the workday and is likely to miss work four or more days per month if she attempts to work full-time. ([Id.](#)). Also received were the treating source statements of Stacy Brandt, NP, signed by Raymond Heller, MD. Ms. Brandt's statement opined Careccia would likely be off task more than 25 percent of a typical workday due to symptoms being severe enough to interfere with the attention and concentration needed to perform even simple work-related tasks; she is able to maintain attention and concentration for less than 30 minutes before requiring a break due to symptoms such as pain and or medication side effects; and she would miss four or more days per month due to her impairments and/or treatment if she attempts to work full-time. ([Filing No. 11-6, at CM/ECF pp. 13-16](#)). Based on these opinions, Careccia was unable to perform any job in the national economy and therefore was disabled. The ALJ, however, accorded "little weight" to the opinions of Dr. Westby, Mr. Stanton, Dr. Heller, and Ms. Brandt. ([Filing No. 10-2, at CM/ECF p. 21](#)).

Careccia argues that the ALJ failed to give the appropriate weight to the evidence and failed to provide "good/specific/supported" reasons for doing so. ([Filing No. 15, at CM/ECF p. 15](#)). Specifically, Careccia argues that the ALJ identified her treating sources but gave "no obvious consideration to the regulation that provides the opinions of treating sources are generally entitled to more

11

weight." See 20 C.F.R. § 404.1527(c)(2) (Filing No. 15, at CM/ECF p. 15). The Commissioner argues that the ALJ properly evaluated the opinion evidence and provided supported reasons for the weight he assigned to each opinion.

"[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.'" Prosch v. Apfel, 201 F.3d 1010, 1012–1013 (8th Cir.2000), quoting 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should control. Tilley v. Astrue, 580 F.3d 675 (8th Cir. 2009). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Hogan v. Apfel, 239 F.3d at 961 (8th Cir. 2001).

If an ALJ discounts a treating physician's opinion, his or her opinion must explain why the opinion was discounted. Here, the ALJ gave the treating source opinions "little weight," specifically finding, "their treatment records do not reflect limitations severe enough to warrant their findings and their options are vague and imprecise." (Filing No. 10-2, at CM/ECF p. 22). The ALJ further points out that while Dr. Westby, Mr. Stanton, Dr. Heller, and Ms. Brandt are all examining sources, only Dr. Westby and Dr. Heller are acceptable medical sources. (Id.). The ALJ observed that based on the record as a whole, Careccia's "symptoms and impairments are not as severe as alleged…" (Id.). The following admissions by Careccia and observations by the ALJ support his decision to give "little weight" to Careccia's treating sources:

- Careccia's high blood pressure and diabetes are controlled with medication. (Filing No. 10-2, at CM/ECF p. 14; Filing No. 10-2, at CM/ECF p. 48).

- Careccia had cataract removal surgery in the past and has undergone two laser surgeries. ([Filing No. 10-2, at CM/ECF p. 14](#)). She testified that her vision is currently 20/25 and 20/75 and was observed wearing glasses at the hearing. ([Filing No. 10-2, at CM/ECF p. 43](#)). The ALJ noted that nothing in the record indicated an ongoing vision impairment after the second laser surgery. ([Filing No. 10-2, at CM/ECF p. 14](#)). Careccia reported her eyes to be her most serious physical impairment, describing that she must get within six inches of a computer to see if clearly and her vision starts to blur after about 20 minutes. ([Filing No. 10-2, at CM/ECF pp. 42-43](#)). In conflict with the above complaints, Careccia testified that she reads constantly and will use a tablet to read, ([Filing No. 10-2, at CM/ECF p. 43](#); [Filing No. 10-2, at CM/ECF p. 51](#)), and during hearing, the ALJ saw her reading her medication information from her phone screen without issue. ([Filing No. 10-2, at CM/ECF p. 20](#), 44).

- Careccia's fibromyalgia was noted by Jay Kenik, MD as being well controlled with medication in July 2016 and stable in November 2016. ([Filing No. 11-4, at CM/ECF p. 41](#); [Filing No. 11-7, at CM/ECF p. 2](#)).

- While Careccia reported lower back pain, she testified it was possible the pain was related to her fibromyalgia. ([Filing No. 10-2, at CM/ECF p. 46](#)). She reported she has never had an x-ray for her back-pain complaints. ([Id.](#)).

- Careccia describes that she woke up one day unable to hear out of her right ear; that she hears constant "white noise" and struggles to hear when there is background noise. ([Filing No. 10-2, at CM/ECF p. 45](#)). She has been fitted for hearing aids and reports she wears them occasionally when she knows she will be in a crowded room as they help balance her hearing out. ([Id.](#)). She did not wear her hearing aids to the hearing and did not appear to have any problems understanding the proceedings despite her "white noise" complaint. ([Filing No. 10-2, at CM/ECF p. 20](#)).

- At the time of the hearing, Careccia testified she has not sought mental health treatment for three or four months. ([Filing No. 10-2, at CM/ECF p. 46](#)). She reports she takes Citalopram to treat depression. ([Id.](#)). In November of 2017, her depression was described as "chronic and stable." ([Filing No. 11-6, at CM/ECF p. 86](#)).

- Careccia's obesity was considered by the ALJ although not listed as an impairment. ([Filing No. 10-2, at CM/ECF p. 14](#)). The ALJ found there was

- no evidence indicating obesity alone or in conjunction with other impairments have disabled her or made it difficult for her to work. (Id.).

- During the CE, Dr. Severson noted Careccia "sat during the history, she pushes up out of the chair easily and ambulates with a mild right limp. She was able to get onto and off the examination table easily." (Filing No. 11-1, at CM/ECF p. 59).

- Careccia has an unrestricted driver's license and reports she drives daily. (Filing No. 10-2, at CM/ECF pp. 40-41). Careccia has driven to California and Arizona, using the cruise control feature and occasionally drives to Lincoln. (Filing No. 10-2, at CM/ECF p. 47).

- Careccia is the sole provider for her 11-year-old adopted daughter who has her own disabilities, including ADHD, ODD, and RAD. (Filing No. 10-2, at CM/ECF p. 40). Careccia reports she does all the house related chores "as best she can." (Filing No. 10-2, at CM/ECF p. 50). In statements made to the Social Security Administration, she indicated she prepares daily meals and performs household chores for 20 minutes at a time. (Filing No. 10-6, at CM/ECF p. 63).

- In January 2017 Careccia indicated she was volunteering at an animal shelter four days a week cleaning cat cages. (Filing No. 10-2, at CM/ECF p. 41; Filing No. 10-2, at CM/ECF p. 14; Filing No. 11-6, at CM/ECF p. 26).

As summarized by the ALJ,

> The claimant's hypertension and diabetes are controlled with medications. Her vision has been stable since she underwent surgery, she reported on various occasions that her fibromyalgia was stable, and she reported that her hearing was benefited with a hearing aid. In terms of the claimant's mental impairments, I first note that the claimant advised at the hearing that she had not been seen in three to four months for her mental health. She takes medications, and her symptoms appear to be well controlled.

(Filing No. 10-2, at CM/ECF pp. 19-20). As demonstrated above, the ALJ's decision includes his reasons for not giving controlling weight to the treating source statements.

b. Failing to Explicitly Discuss § 404.1572 Factors

Careccia also challenges the ALJ's decision because the ALJ "ignored without comment multiple § 404.1572 factors which favor crediting" treating source opinions. (Filing No. 15, at CM/ECF p. 17). These factors included consideration of the examining relationship, that Dr. Westby as a psychologist is a specialist, and the consistency of the treating source reports. (Filing No. 15, at CM/ECF pp. 15-17). An ALJ who credits the opinion of a consulting physician over that of a treating physician must explain why the consulting physician's conclusions were considered more persuasive. Factors to be considered in weighing medical opinions from treating sources, non-treating sources, and non-examining sources include the factors listed by Careccia. (see SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006)). However, an ALJ "is not required to discuss every piece of evidence submitted," and his "failure to cite specific evidence [in the decision] does not indicate that such evidence was not considered." Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). As previously discussed, the ALJ reasons for not giving controlling weight to Careccia's treating sources were supported by the record as a whole, and there is nothing in the record to show that the ALJ "ignored" the necessary factors.

c. Failure to Recontact Treating Physicians

Careccia argues the ALJ failed to develop the record because he did not recontact Ms. Brandt or Mr. Stanton to clarify their opinions after he characterized them as "imprecise and vague." (Filing No. 15, at CM/ECF p. 19). In contrast, the Commissioner argues the ALJ had sufficient evidence to make an informed decision. (Filing No. 18, at CM/ECF p. 12).

The ALJ is required to recontact medical sources and may order consultative evaluations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004), citing 20 C.F.R. §§ 416.912(e), 416.919a(b). The administrative record in this case contains many medical records which provide an ample basis upon which the ALJ could make an informed determination of the merits of Careccia's disability claim. The ALJ did not recontact Careccia's treating sources or order new consultative evaluations because, based on the record as a whole, such contacts were unnecessary.

2. The ALJ's Credibility Assessment

"It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995). Before the ALJ determines an applicant's RFC, the ALJ must determine the applicant's credibility, because subjective complaints play a role in assessing the RFC. Ellis v. Barnhart, 392 F.3d 988, 995-96 (8th Cir. 2005). See also, Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) ("Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility."). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).

The factors outlined in in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) are used to assess the credibility of a claimant's subjective complaints, including: (1) the claimant's daily activities; (2) the duration frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322.

Careccia argues the ALJ failed to consider and discuss her "stellar work history." ([Filing No. 15, at CM/ECF p. 24](#)). The Commissioner concedes that the ALJ did not specifically mention Caracca's work history as a credibility factor but argues correctly that an ALJ is not required to discuss each of the Polaski factors. ([Filing No. 18, at CM/ECF p. 18](#)). It is sufficient that the ALJ acknowledges and considers the factors prior to discounting the claimant's subjective complaints. [Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010)](#) (quoting [Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009)](#)). The ALJ's failure to specifically mention Careccia's work history, standing alone, does not constitute reversible error. [Roberson v. Astrue, 481 F.3d 1020, 1026 (8th Cir. 2007)](#) (finding that the ALJ was not required to refer to every part of the record, including claimant's work history in order to support his credibility determination).

As explained above, the ALJ's opinion outlined several reasons for his decision to discount Careccia's subjective complaints. Those reasons are supported by the record. Upon review of that record as a whole, the court finds substantial evidence supporting the ALJ's decision.

Accordingly,

IT IS ORDERED:

1)  The decision of the Commissioner of the Social Security Administration is affirmed.

2)  Judgment in accordance with this memorandum and order will be entered by separate document.

Dated this 29th day of October, 2019.

> BY THE COURT:
>
> *s/ Cheryl R. Zwart*
> United States Magistrate Judge